UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHRISTOPHER M. REBHOLZ,
CHRISTOPHER M. REBHOLZ AS
TRUSTEE OF THE CHRISTOPHER
M. REBHOLZ LIVING TRUST,
KELLY J. CLEARY-REBHOLZ, AND
KELLY J. CLEARY-REBHOLZ AS
TRUSTEE OF THE KELLY J.
CLEARY-REBHOLZ LIVING TRUST

      Plaintiffs,

v.                        Case No:  2:25-cv-00204-JES-DNF

AIG PROPERTY CASUALTY
COMPANY,

      Defendant.

_____

**OPINION AND ORDER**

    This matter comes before the Court on review of Defendant's Daubert Motion in Limine to Exclude Plaintiffs' Expert Witnesses Jeffrey Warden, Casey Ward, P.E., and Christopher Landaverde, Motion for Summary Judgment (Doc. #54) filed on December 24, 2025. Plaintiffs filed their Response in Opposition (Doc. #57) on January 14, 2026, and Defendant filed its Reply (Doc. #58) on January 28, 2026.[1]  For the reasons set forth below, Defendant's motion is denied.

_____

[1] Although this motion is predominantly a motion in limine, Defendant embedded a motion for summary judgment within the motion.  Thus, AIG is permitted to file a Reply without leave of the court.  See M.D. Fla. R. 3.01(e).

I.

The Rebholzes' home was damaged by Hurricane Ian on September 28, 2022. On March 25, 2025, approximately two and a half years after the loss, Jeffrey Warden ("Warden") inspected the Rebholzes' home. (Doc. #56-2.) Warden was tasked with inspecting the home's fenestration-assemblies—of which there were forty-seven.[2] (Id. at pp. 6-7.) Warden conducted a "voluntary forensic water testing" on five of the fenestration assemblies. (Id. at pp. 6-7, 130.) The testing used calibrated equipment and was done in compliance with the ASCE Guidelines for Forensic Engineering Practice.

During Warden's test, he found three of the tested specimens "evidenced water leaks through the assemblies" and concluded that sixty percent of the windows were damaged by Hurricane Ian. (Id. at p. 7.) In reaching this conclusion, Warden relied on information from the Rebholzes as well as the results of the voluntary forensic water testing.

Christopher Landaverde ("Landaverde") inspected the Rebholzes' home on August 8, August 11, and August 13, 2025, almost three years after the date of loss. (Doc. #56-4, p. 2.) During this inspection, Landaverde took pictures of and made various observations about the Plaintiffs' roof. (Id.) After sharing his findings and photos with Casey Ward ("Ward"), both Landaverde and

_____

[2] There were two sliding glass doors, five swing doors, and forty window assemblies.

-2-

Ward concluded that the roof was damaged by Hurricane Ian. In reaching their conclusion, they considered information from the National Weather Service, National Oceanic & Atmospheric Administration, CompuWeather, repair invoices, repair protocol, and the Rehbolzes. (Id. at p. 11.) Ward and Landaverde concluded the roof sustained less than twenty-five percent of total roof damage, however, given circumstances in utilizing "harvested concrete roof tiles" a total roof replacement would be required to comply with the Florida Building Code. (Id. at pp. 15-16.)

In the Plaintiffs' expert disclosure, the Rebholzes identified all three individuals as experts they intended to call. (Doc. #54-4.) While Plaintiffs disclose what Ward and Warden may testify to, they failed to disclose what Landaverde may testify to. Further, in the disclosure, there was no information regarding Landaverde's opinions—though the report he drafted alongside Ward was provided to Defendant.

## II.

Admission of expert opinion evidence is governed by Federal Rules of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  In Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), and Daubert v. Merrell Dow Pharms., 509 U.S. 579 (1993), the Supreme Court held that the trial court has a "gatekeeper" function designed to ensure that all expert testimony is both relevant and reliable.  The importance of this gatekeeping function "cannot be overstated."  United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004)(en banc).

In determining the admissibility of expert testimony under Rule 702, the Court applies a "rigorous" three-part inquiry. Frazier, 387 F.3d at 1260.  A district court determines the admissibility of expert testimony by considering whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Knepfle v. J-Tech Corp., 48 F.4th 1282, 1294 (11th Cir. 2022) (quoting City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998)).  In short, "the expert must be qualified; his methodology must be reliable; and his testimony must be helpful to the trier of fact."  Doe v. Rollins Coll., 77 F.4th 1340, 1347

(11th Cir. 2023).  "[T]he party seeking to introduce the expert at trial bears the burden of establishing his qualifications, reliability, and helpfulness."  Knepfle, 48 F.4th at 1294 (citing Frazier, 387 F.3d at 1260).

"Even expert testimony which satisfies these three requirements, however, may nonetheless be excluded under Rule 403 if the probative value of the expert testimony is substantially outweighed by its potential to confuse or mislead the jury, or if it is cumulative or needlessly time consuming."  Frazier, 387 F.3d at 1263.  In the final analysis, the admission of expert testimony is a matter within the discretion of the trial court.  Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1103 (11th Cir. 2005); Frazier, 387 F.3d at 1258.

The gatekeeper function, however, does not provide the Court with an opportunity to substitute its judgment for that of a jury as to the persuasiveness of the expert evidence.  United States v. Barton, 909 F.3d 1323, 1332 (11th Cir. 2018).  Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  Id. (citation omitted).

The expert testimony anticipated in this case is not scientific.  Nonetheless, "[t]he principles set out in Daubert apply to soft-science expert testimony. 'Social science testimony,

like other expert testimony must be tested to be sure that the person possesses genuine expertise in a field and that her court testimony adheres to the same standards of intellectual rigor that are demanded in her professional work.'" Carrizosa v. Chiquita Brands Int'l, Inc., 47 F.4th 1278, 1317-18 (11th Cir. 2022)(citations omitted).

> That said, "social science research, theories, and opinions cannot have the exactness of hard science methodologies," and "peer review, publication, error rate, etc. are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert." [] Where "ideal experimental conditions and controls" are precluded, "other indicia of reliability are considered under Daubert, including professional experience, education, training, and observations." [] Where appropriate, social science expert testimony can give the jury a view of the evidence well beyond their everyday experience.

Id. at 1318 (internal citations omitted).

### III.

Defendant seeks to exclude the opinions of Plaintiffs' experts, Jeffrey Warden, Casey Ward, and Christopher Landaverde, arguing that each expert is unreliable and will not assist the trier of fact.

The first requirement is that the expert is qualified to testify on the subject matter. As noted by the Defendant, it does not contest any of the experts' qualifications. (Doc. #54, p.8.) The Court will therefore proceed to the other requirements and deem the first element met as to all experts.

-6-

**A. Jeffrey Warden**

**(1)  Reliability of Methodology**

Defendant argues that Warden's conclusions are unreliable because: (1) he inspected the property nearly two and a half years after the date of loss; (2) his methodology is flawed; (3) his conclusions are based solely on photographs taken a year after the date of loss, unreliable information from Plaintiff and/or their representative, and a late inspection; and (4) he lacks any credible knowledge of the pre-loss condition of the windows and doors of the property.  (Doc. #54, p. 12.)  Plaintiffs respond that most of Defendant's arguments go to the credibility of the witness rather than the reliability and any argument about the methodology of Warden ignores that such testing was done in accordance with relevant guidelines.  (Doc. #56, pp. 5-6.)

Defendant contends that Warden's methodology is flawed, because, of the forty-seven fenestration assemblies that were available to Warden, he only tested five specimens.  (Doc. #54, p. 13.)  This is approximately ten percent of the entire sample to which Warden had access.  (Id.)  After testing these five specimens, Warden concluded that since only two of the five fenestrations passed, then approximately sixty percent of the windows were damaged by Hurricane Ian and needed to be replaced. (Id. p. 14.)  While Defendant argues Warden should have tested more fenestrations, Plaintiffs point out that testing ten percent

-7-

of the fenestrations follows "the relevant ASCE Guidelines for Forensic Engineering Practice." (Doc. #56, p. 5.) Further, in line with the AMMA and FGIA guidelines, Warden investigated the wood bucks of the fenestrations when he concluded that there was no preexisting evidence of water leaks. (Doc. #56, p. 6.) As such, the method utilized by Warden is within the accepted practice of the industry.

Defendant also contends that the late inspection and information relied upon prevents Warden from being a reliable expert. Specifically, Defendant has an issue with the inspection coming approximately two and a half years after the date of loss, as well as the photos and information Warden relied upon allegedly being unreliable, which prevents Warden from having any credible knowledge of the pre-loss condition of the windows and doors of the property. This argument, however, does not go to methodology. Rather, it goes to the weight attributed to the various sources and the conclusions reached by Warden. This is an issue for the jury, not a reason to exclude the opinion as unreliable. See Barton, 909 F.3d at 1332.

## (2) Helpfulness

The third prong asks, "whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 593. Commonly referred to as the "helpfulness" inquiry, expert testimony can properly be applied and is helpful if it relates to

-8-

any issue in the case and if it concerns matters that are beyond the understanding of an average lay person.  Prosper v. Martin, 989 F.3d 1242, 1249 (11th Cir. 2021).

It is undisputed that Warden reviewed the property at issue approximately two and a half years after Hurricane Ian, that the photos he considered were taken one year after the date of loss, and that he relies on lay witness statements.  These facts do not take away from the analysis of the fenestrations done by Warden. Any quarrel with the strength or weaknesses of Warden's evaluation is better suited for cross-examination.

**B. Casey Ward, P.E.**

**(1)  Reliability of Methodology**

Defendant argues that Ward's testimony is unreliable because: (1) he did not personally inspect the property; (2) the photographs of the property he considered were taken nearly three years after the loss; (3) his conclusions are based solely on unverified, unreliable information from Plaintiffs and/or their representative; and (4) he lacks any credible knowledge of the pre-loss condition of the roof of the property.  (Doc. #54, p. 16.)  Plaintiff again points out that these arguments go to the credibility of the witness rather than reliability.

None of the arguments that Defendant presents target the methodology used.  Instead, the arguments focus on the timing of the inspection and sources of information relied upon.  As stated

above, such issues are for the jury and not a reason to exclude the opinion as unreliable.

### (2)  Helpfulness

It is undisputed that Ward did not physically inspect the property, but instead relied upon photographs and information gathered by Landaverde almost three years after the date of loss. These facts do not take away from the other documents reviewed by Ward—including roof repair invoices from work done to the roof after Hurricane Irma but before Ian, repair protocol created by AIG—as well as observations of ongoing roof leaks after repairs AIG called for were performed and the wind speeds of Hurricane Ian.  (Doc. #56-3 at 18:2-4, 26:7-21, 27:11-28:1, 29:2-14, 31:3-22; Doc. #56-4 pp. 11-14.)

### C. Christopher Landaverde

### (1)  Reliability of Methodology

Defendant argues that Landaverde's testimony is unreliable and unhelpful because: (1) he inspected the property nearly three years after the loss; (2) his conclusions are based solely on unverified, unreliable information from Plaintiffs and/or their representatives; and (3) he lacks any credible knowledge of the pre-loss condition of the roof.  (Doc. #54, p. 20.)  Plaintiffs point out, yet again, that these issues are with credibility rather than methodology.  (Doc. #56, pp. 10-11.)

As discussed above, none of these arguments target the methodology utilized by Landaverde. Instead, the arguments focus upon the date the information was obtained, and the sources of information relied upon. Such issues are for the jury and not a reason to exclude the opinion as unreliable.

**(2)  Helpfulness**

It is undisputed that Ward reviewed the property almost three years after Hurricane Ian and after the property's condition had changed. These facts do not take away from the analysis that relied partially on repair invoices, homeowner information, and other prior weather events in Southwest Florida. (Doc. #56-5 at 18:1-16, 24:15-25:8, 32:23-33:6).

Ultimately, the Court finds that all experts satisfy all three prongs of Daubert, and the Court finds no undue prejudice from the anticipated testimony. The weight of the testimony is an issue for the jury.

**(3)  Disclosure Pursuant to Rule 26(a)**

Federal Rules of Civil Procedure 26(a) requires a party to disclose "any witness it may use at trial to present evidence under Federal Rule of Evidence 702 . . .." Fed. R. Civ. P. 26(a)(2)(A). The disclosure must include—where the witness must provide a written report—(1) complete statement of opinions he will express and the basis for them; (2) the facts or data considered; (3) any exhibits that will be used to summarize or support them; (4) the

-11-

witness's qualifications; (5) a list of all other cases the witness has testified in the last four years at trial or by deposition; and (6) a statement of the compensation to be paid for the study and testimony in the case. Fed. R. Civ. P. 27(a)(2)(B). Where a party fails to provide this information, the party is not permitted "to use the information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

AIG argues that Plaintiffs' disclosure failed to disclose information regarding the trial testimony of Landaverde as well as a complete statement of his opinions, the facts and data considered in forming them, and the reasons for his data. (Doc. #54, p. 2.) While it is clear Plaintiffs failed to disclose what Landaverde may testify about, the failure to provide the information is harmless. (Doc. #54-4.) Landaverde assisted Ward in completing the report already in the possession of the Defendant and he signed that report. (Id.) Any expected testimony is likely to remain within the scope of the report drafted by both Landaverde and Ward, thereby not subjecting Defendant to any prejudice since it provides information about the witness's opinions, the facts and data considered, and how he reached them.

**D. Defendant's Motion for Summary Judgment is Denied**

Given the Defendant's Motion for Summary Judgment relies on the exclusion of the above expert witness testimony, its motion will be denied.

Accordingly, it is now

**ORDERED:**

Defendant's Daubert Motion in Limine to Exclude Plaintiffs' Expert Witnesses Jeffrey Warden, Casey Ward, P.E., and Christopher Landaverde, Motion for Summary Judgment (Doc. #54) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this __12th__ day of March 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record

-13-